### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
ELNORA J. CARUSO              :      Civ. No. 3:14CV01560(SALM)
                              :
v.                            :
                              :
CAROLYN W. COLVIN, ACTING     :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION                :      January 11, 2016
                              :
------------------------------x
```

<u>**RECOMMENDED RULING ON CROSS MOTIONS**</u>

Plaintiff Elnora Caruso brings this action pursuant to 42 U.S.C. §405(g) and §1383(c)(3), seeking review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI"), under Title XVI of the Act, 42 U.S.C. §423(a)(1)(E) and §1382(a)(1). Plaintiff has moved to reverse the Commissioner's decision, or in the alternative, for remand. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner, or in the alternative, for Remand **[Doc. #20]** is **DENIED**. Defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #24]** is **GRANTED**.

I.   **ADMINISTRATIVE PROCEEDINGS**

The procedural history of this case is not disputed. Plaintiff filed an application for DIB and SSI on January 29, 2009, alleging disability as of September 30, 2007.[1] [Certified Transcript of the Record, compiled on January 14, 2015, (hereinafter "Tr.") 552] Her DIB and SSI claims were denied initially on March 6, 2009, and upon reconsideration on July 30, 2009. [Tr. 62-62; 74-84; 108-113] Plaintiff requested a timely hearing before an Administrative Law Judge ("ALJ") on August 17, 2009. [Tr. 17] Plaintiff, represented by counsel, appeared and testified at a hearing held on April 19, 2010, and a supplemental hearing held on August 11, 2010. [Tr. 7] Vocational Expert ("VE") Renee Jubre testified at the April 19, 2010 hearing, while VE Courtney Olds testified at the August 11, 2010 hearing. [Tr. 53-59; 24-29]

On September 23, 2010, Administrative Law Judge Marlene W. Heiser found that plaintiff was not disabled, and denied her claim. [Tr. 7-16] The Decision Review Board ("DRB") selected plaintiff's claim for review. However, the DRB did not complete the review within ninety days, thereby rendering ALJ Heiser's decision the final decision of the Commissioner. [Tr. 1-3] Plaintiff appealed the ALJ's decision to the District Court in the case Caruso v. Astrue, Civ. No. 3:11CV00428(AWT)(DFM).

---

[1] Plaintiff's last date insured is December 31, 2012. [Tr. 555]

Magistrate Judge Donna F. Martinez filed a recommended ruling on September 23, 2010, remanding the case to the Commissioner. [Doc. #24; Tr. 580-90] The Court found that the ALJ had "not adequately explained the basis of her consideration of the medical evidence" in connection with assessment of the plaintiff's Residual Functional Capacity ("RFC") and remanded the matter for "further consideration of the medical opinion evidence." [Tr. 589] The recommended ruling was accepted by District Judge Alvin W. Thompson on October 12, 2012, after the Commissioner advised the Court that it did not oppose remand. [Tr. 578] Upon remand by the Court, the Appeals Council ordered that the case be remanded to an ALJ "for further proceedings consistent with the order of the court." [Tr. 594]

On remand, plaintiff, represented by counsel, appeared at a hearing before ALJ James E. Thomas on January 8, 2013, and a supplemental hearing on May 23, 2013. [Tr. 1286-1315; 1316-25] VE Hank Lerner testified at the January 8, 2013 hearing, while VE Dr. Steven Sax testified at the May 23, 2013 hearing. [Tr. 1307-15; 1320-24] On August 8, 2013, ALJ Thomas found that plaintiff was not disabled, and denied her claim. [Tr. 549-77] Plaintiff's October 30, 2013, request for review of the hearing decision was denied on August 23, 2014. [Tr. 535; 546-48] The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action

for review and moves to reverse the Commissioner's decision.

## II.  STANDARD OF REVIEW

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt

4

whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civ. No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

**It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch.** "In

5

reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

This case presents an additional aspect of review, because it arises out of an ALJ's decision rendered in response to a remand from this Court and order from the Appeals Council to consider particular matters on remand. When the Appeals Council remands a case to an ALJ, the Regulations dictate: "The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§404.977(b), 416.1477(b). "The ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand." Scott v. Barnhart, 592 F. Supp. 2d 360, 371 (W.D.N.Y. 2009) (compiling cases).

Here, the Appeals Council ordered only that the proceedings on remand be "consistent with the order of the court." [Tr. 594]

6

The "order of the court" directed that a new hearing be conducted to allow the ALJ to "adequately explain[] the basis of her consideration of the medical evidence" in connection with assessment of the plaintiff's Residual Functional Capacity ("RFC") and for "further consideration of the medical opinion evidence." [Tr. 589] Thus, the Court must also determine on this review whether the ALJ complied with the dictate of the Court as provided in the previous remand order.

### III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1). To qualify for supplemental security income an individual must be eligible on the basis of income and resources. 42 U.S.C. §1381a.

To be considered disabled under the Act and therefore entitled to benefits, the plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c) (alterations added) (requiring that the impairment "significantly limit [ ] ... physical or mental ability to do basic work activities" to be considered "severe"); 42 U.S.C. §1382c(a)(3)(B), 20 C.F.R. §416.920(c).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §§404.1520; 416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work,

the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §404.1545(a).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation omitted). "[E]ligibility for benefits is to be determined in

9

light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV.  THE ALJ'S DECISION

Following the above-described five step evaluation process, ALJ Thomas concluded that plaintiff was not disabled under the Social Security Act. [Tr. 549-77] At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 30, 2007, the alleged onset date. [Tr. 555] At step two, the ALJ found that plaintiff had the following severe medical impairments: degenerative disc disease of the cervical and lumbar spine, with a residual chronic pain disorder; osteoarthritis/mild degenerative joint disease of the right shoulder and right knee; obesity; fibromyalgia; affective disorder; anxiety disorder; and personality disorder (20 C.F.R. 404.1520(c) and 416.920(c)). Id.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. [Tr. 557 (citing 20 C.F.R. §§404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)]

At step four, the ALJ found plaintiff had the residual functional capacity ("RFC") to perform

light work as defined in 20 C.F.R. 404.1567(b) and

> 416.967(b) except the claimant requires a sit/stand
> option and can stand and/or walk for four hours in an
> eight hour workday, with occasional climbing of stairs
> and ramps, balancing, stooping, kneeling, crouching,
> and crawling, but no climbing of ropes, ladders or
> scaffolds. The claimant is limited to frequent
> reaching and handling with the upper extremities. The
> claimant is limited to jobs involving simple, routine,
> repetitive tasks with short, simple instructions and
> few workplace changes. She has the attention span to
> perform simple work tasks for two-hour intervals
> throughout an eight-hour workday, and can occasionally
> have superficial interaction with coworkers but can
> have no contact with the public. The claimant's work
> environment must not have high-paced production
> demands or strict adherence to timed production.

[Tr. 560-61] At the RFC stage, the ALJ engaged in an

extraordinarily detailed analysis of the medical records,

spanning a full 14 pages of the opinion. [Tr. 561-574]

After careful consideration of the voluminous medical

records, the ALJ found plaintiff unable to perform any past

relevant work. [Tr. 574-75] At step five, considering

plaintiff's age, education, work experience and RFC, the ALJ

found that jobs existed in significant numbers in the national

economy that plaintiff could perform. [Tr. 575-76]

**V.   DISCUSSION**

    A.   <u>The ALJ Did Not Commit Factual Errors, Misstatements,
Distortions, or Mischaracterizations of the Evidence.</u>

Plaintiff argues that the ALJ mischaracterized the evidence

of record in evaluating her claims. Specifically, the plaintiff

takes issue with five alleged factual errors, misstatements,

11

distortions and/or mischaracterizations of the evidence. [Doc. #20-1 at 9-13]

Plaintiff first argues that the ALJ's statement that she was "uncooperative with the shoulder range of motion assessment in [the] emergency room" was error. [Tr. 572; 725-54; 757-86; Doc. #20-1 at 10] Plaintiff contends that, in fact, she was "far from uncooperative," rather, she was crying during the examination due to pain. [Doc. #20-1 at 10 (citing Tr. 730)] The ALJ did state that "Dr. Rittner notes that the claimant was uncooperative with the shoulder range of motion assessment in [the] emergency room[.]" [Tr. 572] This statement was properly attributed by the ALJ to Dr. Rittner. The record reveals that Dr. Rittner stated in her September 9, 2011, RFC assessment: "clmt uncooperative with shoulder ROM assessment in ER[.]" [Tr. 766] Accordingly, plaintiff's motion is denied as to this claim of error.

Plaintiff next argues that the ALJ erroneously stated that Dr. Cherneskie, her primary care provider, opined that the plaintiff had "5% use of hands, which is completely unsupported in the record." [Tr. 573] Plaintiff further asserts that this was the sole basis for the ALJ's assignment of little weight to Dr. Cherneskie's opinions. Plaintiff is mistaken, on both counts. In a Medical Source Statement dated February 25, 2012, Dr. Cherneskie did in fact opine that plaintiff had 5% use of

her hands, fingers, and arms bilaterally. [Tr. 1251] Furthermore, the ALJ's evaluation of Dr. Cherneskie's opinion was not based solely on this 5% use statement. The ALJ also gave Dr. Cherneskie's opinions "little weight" based on plaintiff's inconsistent complaints and the medical record as a whole. [Tr. 573-74] Plaintiff testified in April 2010 that she had no problems with her hands. [Tr. 47] The ALJ properly noted that plaintiff complained to her orthopedist on October 11, 2011, of "bilateral wrist pain ... that she has had for years." [Tr. 1237] However, in follow-up appointments on October 24, 2011, and November 11, 2011, there are no references to wrist pain. [Tr. 1238-40] Later orthopedic examinations noted that plaintiff had "equal grip strength bilaterally" without pain [Tr. 1167-68 (6/15/11)] and manual strength at a 5 out of 5. [Tr. 1170; 1176-78; 1239; 1281; 1284-85] Accordingly, plaintiff's motion is denied on this claim of error.

Plaintiff next contends that it was incorrect for the ALJ to assign the opinion of State Agency medical consultant Dr. Firooz Golkar great weight, due in part to the doctor's specialization. [Doc. #20-1 at 12; Tr. 571] Specifically, the plaintiff argues that Dr. Golkar's "specialty in emergency medicine, which by nature deals with acute conditions, is not especially relevant" to plaintiff's medical impairments. [Doc. #20-1 at 10] However, the ALJ's evaluation of Dr. Golkar's

opinion was not based solely on this specialty. Rather, the ALJ assigned "great weight due to [the doctor's] specialty, the nature of the review (beginning at the alleged onset), and the general consistency with the opinion of Dr. Tracy and the substantial evidence of record[.]" [Tr. 571 (citing Ex. 11F, B2F, B5F, B8F, B25F)] Plaintiff does not challenge the other bases for the weight assigned by the ALJ to Dr. Golkar's opinion. There is no indication that the ALJ relied solely on the specialty of Dr. Golkar in according his opinion great weight. Dr. Golkar is a state agency medical consultant, and as such is considered to be a highly qualified physician, who is also an expert in Social Security disability evaluation. See 20 C.F.R. §404.1527(e) and 20 C.F.R. §416.927(e). Accordingly, plaintiff's motion is denied on this claim of error.

Fourth, plaintiff argues that the ALJ incorrectly stated that she abused her prescription pain medication, resulting in discharge from her pain clinic, and that she lost custody of her son "due to opiate abuse." [Doc. #20-1 at 10-11; Tr. 570] The ALJ accurately cited a Psychology Evaluation conducted on September 19, 2011, which notes that the plaintiff was tearful when she spoke of her 12-year-old son because he was placed with her father due to her husband being an addict [Tr. 1201] On April 13, 2011, Dr. Diana Martinez noted that the plaintiff's child was removed due to deplorable conditions of the home. [Tr. 1142]

14

The ALJ's statement that "[i]t appears that the claimant's son was removed from her custody due to opiate abuse" is supported by the record. [Tr. 570, 1142, 1182, 1201] Apparently plaintiff takes issue with the fact that the opiate abuse was not specifically attributed by the ALJ to her husband. However, the opiate abuse identified in the records, and attributed to plaintiff, was the selling of her pain medication, and the ALJ's finding that plaintiff's credibility was limited by factors including "her possible narcotic abuse, resulting in discharge from a pain care clinic" is supported by substantial evidence. [Tr. 569]

The record shows a pattern of plaintiff seeking opiate prescriptions, purportedly to treat bilateral knee pain, but testing negative for actual use of the prescribed medications, suggesting that plaintiff was abusing the prescriptions by selling or transferring them to others. On April 3, 2008, Jennifer Maher, RMA, noted that plaintiff was counseled on the proper use of controlled substances, reminded that she had a controlled substance agreement with the practice, and was sent for a serum toxicology test [Tr. 338], which revealed that she had no drugs in her system. [Tr. 332-35, 340] Plaintiff was counseled regarding her use of controlled substances on July 9, August 11, September 11, October 9, November 6 and December 8, 2008. [Tr. 312, 318-19, 324-25, 330]

A treatment note from Dr. Jacob Rauchwerger dated July 2, 2009, states that the doctor was

> made aware by patient seen this afternoon that patient (Elnora Caruso) has been selling Percocet medication prescribed by [Comprehensive Pain & Headache Treatment Centers]. Was told patient sells opioid medication in beginning of month and then saves pills to take towards the end of the month to test positive on UDS.

[Tr. 433] Plaintiff was called in for a pill count and UDS (Urine Drug Screen), but was a no-show on July 2, 2009. [Tr. 432-33] On July 6, 2009, plaintiff denied any drug diversion, was placed on bi-weekly prescriptions, with the explanation that she would be put back on monthly prescriptions if there were no new issues. [Tr. 432] Plaintiff was called in for a pill count of Percocet on July 16, 2009; a quantity of 42 pills was expected, but only 34 were produced. [Tr. 428] On August 6, 2009, plaintiff stated "she found out who made [a] call to office stating she is selling her medication. Patient accused brother's ex-girlfriend. Patient states understands why being given biweekly prescriptions and will do whatever needs to do to get trust of practice again." [Tr. 425] Dr. Rauchwerger noted that the plaintiff would remain on bi-weekly prescriptions until trust could be established. [Tr. 426] Plaintiff was called on August 13, 2009, to appear for a pill count. [Tr. 424] She was

discharged from the practice by Dr. Rauchwerger later that day.[2] [Tr. 422-23]

There is substantial evidence in the record supporting the ALJ's comment that abuse of opiate prescriptions was a problem in plaintiff's household. Further, there is substantial evidence supporting the ALJ's credibility finding relating to the record of opiate prescription abuse; if plaintiff was diverting pain medication, that supports a finding that her pain was not as severe as claimed. Accordingly, plaintiff's motion is denied on this claim of error.

Last, plaintiff argues that the ALJ incorrectly found that she had no spinal cord abnormalities. She argues that her

---

[2] On August 19, 2009, Dr. Rauchwerger wrote:

> Patient presented for pick-up of Percocet prescription. Informed again that patient is selling opioid medication. Same patient (see note – 07/02/2009) in this practice told Shannon Ricard, Avee representative, that patient is selling medication to support drug addiction of husband and son. Patient taking 2 Percocet tablets the night prior to coming to CPHTC and 3 tablets day of visit in order to test positive on UDS. Patient has been called in for 2 pill counts and there was a discrepancy. Patient was discharged on 08/13/2009, however, did not receive letter. Patient explained being discharge[d] since patient-doctor trust affected. Patient denied being non-compliant and did make a threat but retracted statement. Patient with history of Failed Back Surgery Syndrome. Patient told cannot prescribe opioid medication after today. New discharge letter given today to patient. Patient given 15 day supply of Percocet. Discharge protocol in effect as of today.

[Tr. 421]

cervical and lumbar stenosis is per se evidence of a spinal cord
abnormality. [Doc. 20-1 at 11 (citing Tr. 694, 1171-72, 1176-78,
1197, 1248, 1281)] The Court disagrees. Stenosis does not always
result in or equate with a spinal cord abnormality. See, e.g.,
Esposito v. D. Khatri, No. 08CV742-H(WMC), 2009 WL 702218, at *1
(S.D. Cal. Mar. 16, 2009) (noting that "MRI revealed no
abnormalities of the spinal cord, some stenosis at the C6-7
level"); Lefler v. Unknown Party No. 1, No. 1:10CV800, 2011 WL
3100389, at *1 (W.D. Mich. June 29, 2011), report and
recommendation adopted, No. 1:10CV800, 2011 WL 3100384 (W.D.
Mich. July 25, 2011) (noting MRI revealed mild cervical stenosis
but no spinal cord compression); Dyson v. Astrue, No.
2:09CV3846, 2010 WL 2640143, at *2 (E.D. Pa. June 30, 2010) (MRI
revealed multilevel stenosis but no abnormal signal in the
spinal cord); Pethers v. Comm'r of Soc. Sec., 580 F. Supp. 2d
572, 576 (W.D. Mich. 2008) (same); Utterback v. Colvin, No.
11CV126(WMC), 2014 WL 976899, at *1 (W.D. Wis. Mar. 12, 2014)
(same).

The ALJ found at step two that plaintiff's degenerative
disc disease of the cervical and lumbar spine, with residual
chronic pain, was a severe medical impairment. [Tr. 555] The ALJ
noted positive MRI and x-ray findings of plaintiff's cervical
and lumbar spine throughout the decision. [Tr. 555, 557, 561]
However, the ALJ accurately stated: "M.R.I. of the cervical

spine on June 22, 2011 revealed spinal stenosis at C5-C6
(moderate diffuse disc bulging and marginal osteophyte
formation) and a moderate central disc herniation at C4-C5, but
no abnormality of the cord." [Tr. 557] The MRI report of
plaintiff's cervical spine dated June 22, 2011, states that
there is "no abnormality of the cord." [Tr. 1248] Plaintiff's
orthopedist Dr. Fejos noted on July 19, 2011, that there was "no
abnormality of the cervical cord." [Tr. 1170] Dr. Fejos also
noted that a lumbar spine MRI dated June 1, 2011, showed,
"multilevel degenerative disc disease with small disc herniation
at L3-4 and L5-S1, and a disc bulge at L4-5 with moderate severe
narrowing of the spinal canal at the L4-5 level and moderate
narrowing of the spinal canal at L3-4." [Tr. 1170] This finding
is consistent with the MRI report. [Tr. 1172] Plaintiff points
to no medical record that the ALJ failed to consider.

Accordingly, the ALJ's finding is supported by substantial
evidence of record.

B.   Substantial Evidence Supports the ALJ's Step Three
     Findings.

Plaintiff next challenges the ALJ's finding at step three
that she does not meet Listings 1.04A or 1.04C. [Doc. #20-1 at
13-15] She argues that her medical impairments of Failed Back
Surgery Syndrome, chronic low back pain, cervical stenosis and
spondylosis, lumbar stenosis and spondylosis and lumbar

19

degenerative disc disease, alone, or in combination equal
Listings 1.04A and 1.04C. Id. "For a claimant to show that [her]
impairment matches a listing, it must meet all of the specified
medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990)
(emphasis in original). "The applicant bears the burden of proof
[at this stage] of the sequential inquiry[.]" Talavera v.
Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

The relevant listings provide as follows:

Disorders of the spine (e.g., herniated nucleus
pulposus, spinal arachnoiditis, spinal stenosis,
osteoarthritis, degenerative disc disease, facet
arthritis, vertebral fracture), resulting in
compromise of a nerve root (including the cauda
equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by
neuro-anatomic distribution of pain, limitation of
motion of the spine, motor loss (atrophy with
associated muscle weakness or muscle weakness)
accompanied by sensory or reflex loss and, if there
is involvement of the lower back, positive straight-
leg raising test (sitting and supine)[.]

or

...

C. Lumbar spinal stenosis resulting in
pseudoclaudication, established by findings on
appropriate medically acceptable imaging, manifested
by chronic nonradicular pain and weakness, and
resulting in inability to ambulate effectively, as
defined in 1.00B2b

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§1.04A, C.

As to Listing 1.04A, the ALJ correctly held that the

medical evidence of record does not support a finding of nerve root compression, which is a required element of the listing. For example, an MRI of plaintiff's cervical spine on June 22, 2011, revealed "no abnormality of the cervical cord." [Tr. 1173; see also Tr. 1170] Although an MRI of plaintiff's lumbar spine on June 1, 2011, showed "multilevel degenerative disc disease with small disc herniation at L3-4 and L5-S1, and a disc bulge at L4-5 with moderate severe narrowing of the spinal canal at the L4-5 level and moderate narrowing of the spinal canal at L3-4," there was no finding of nerve root compression. [Tr. 1170; 1172] Plaintiff does not point to any contrary evidence.

Similarly, the ALJ did not err in finding that the medical evidence of record did not support a finding of "motor loss" or "sensory loss" as required by the listing. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A. The record shows that plaintiff had full muscle strength [Tr. 1167-68, 1170, 1176-78, 1197, 1229, 1239, 1253, 1255-57, 1281, 1284-85] and intact sensation. [Tr. 687, 1123, 1148, 1218, 1234] Thus, there is substantial evidence supporting the ALJ's finding that the plaintiff failed to meet her burden of providing medical evidence demonstrating that she suffers from nerve root compression, characterized by motor loss or sensory loss, and thus that she cannot meet Listing 1.04A. Cf. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010) (noting that substantial

evidence supported ALJ's conclusion that Listing 1.04A was not
satisfied because medical records did not show required
neurological losses).

With respect to Listing 1.04C, the ALJ found that the
record did not reflect an "inability to ambulate effectively" as
required to meet the Listing. [Tr. 557] In her brief, plaintiff
has failed to cite any evidence of record that contradicts this
finding, and indeed does not mention ambulation at all. [Doc.
#20-1 at 14] Pursuant to 1.00B.2.b., an inability to ambulate
effectively "means an extreme limitation of the ability to walk"
and "is defined generally as having insufficient lower extremity
functions to permit independent ambulation without the use of a
hand-held assistive device(s) that limits the function of both
upper extremities." 20 C.F.R. Pt. 404, Subpt. P, Appendix 1,
§1.00B.2.b.(1). To ambulate effectively, one "must be capable of
sustaining reasonable walking pace over a sufficient distance to
be able to carry out activities of daily living." Id. at
§1.00B.2.b.(2). There is no evidence of record that plaintiff
uses a hand-held assistive device that limits the function of
her upper extremities. To the contrary, there is substantial
evidence of record that plaintiff is capable of ambulating
effectively, as that term is defined by section 1.00B.2.b.(2).
See Tr. 509, 1145, 1148 (treatment notes reflecting normal gait
or ability to ambulate unassisted); 1145 (DDS evaluation

indicating plaintiff did not use an assistive device, cane,
walker or wheelchair); 972, 976, 980, 982, 984, 989, 992, 1032,
1050, 1052, 1062, 1066, (treatment notes from Comprehensive Pain
& Headache Treatment Centers, LLC reflecting plaintiff's gait is
"[n]ot antalgic" and/or "[n]o assisted device"); 1176-78
(treatment notes from Dr. Fejos, Orthopedic Associates of
Middletown, PC, indicating "satisfactory gait.").

Accordingly, the Court finds that substantial evidence
supports the ALJ's finding that plaintiff did not meet Listing
1.04, and there is no reversible error with respect to the ALJ's
step three analysis.

C.   The ALJ Correctly Applied the Treating Physician Rule.

Plaintiff next contends that the ALJ erred in his
application of the treating physician rule. She also argues that
the ALJ erroneously relied on the opinions of the state
reviewing non-examining physicians over those of her treating
physicians, Dr. Cherneskie and Dr. Fejos. [Doc. #20-1 at 15-18]

Pursuant to 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2), a
treating source's opinion will usually be given more weight than
a non-treating source. If it is determined that a treating
source's opinion on the nature and severity of a plaintiff's
impairment is "well-supported by medically acceptable clinical
and laboratory diagnostic techniques and is not inconsistent
with the other substantial evidence in [the] case record," the

23

opinion is given controlling weight. 20 C.F.R. §§404.1527(c)(2),
416.927(c)(2). If the opinion, however, is not "well-supported"
by "medically acceptable" clinical and laboratory diagnostic
techniques, then the opinion cannot be entitled to controlling
weight. Id. If the treating source's opinion is not given
controlling weight, the ALJ considers the following factors in
weighing the opinion: length of treatment relationship,
frequency of examination, nature and extent of the treatment
relationship, relevant evidence used to support the opinion,
consistency of the opinion with the entire record, and the
expertise and specialized knowledge of the source. See 20 C.F.R.
§§404.1527(c)(2)-(6), 416.927(c)(2)-(6); SSR 96-2P, 1996 WL
374188, at *2 (S.S.A. July 2, 1996). If the treating physician's
opinion is not supported by objective medical evidence or is
inconsistent with other substantial evidence in the record, the
ALJ need not give the opinion significant weight. See Poupore,
566 F.3d at 307.

Plaintiff first argues that the opinions of her treating
physicians, Dr. Cherneskie and Dr. Fejos, were entitled to
controlling weight. [Doc. #20-1 15-18] With respect to these
opinions, the ALJ stated:

> there is little objective, clinical evidence of record
> to support their conclusions. The opinions are
> inconsistent with the clinical examinations of record
> reflecting intact upper and lower extremity motor
> strength, sensation, deep tendon reflexes, and gait.

> They are also inconsistent with the claimant's subjective report of improvement in pain with treatment (medication and physical therapy) to Dr. Fejos, her physical therapist, her prior pain management provider, and Dr. Rosenberg. Also significantly, Dr. Rosenberg observed that the claimant presented as being in more control of her pain and its management, with minimal pain behaviors and good posture.

[Tr. 566-57]

Dr. Cherneskie completed three Medical Source Statements with generally similar findings of functional limitations in 2010, 2012 and 2013. [Tr. 530-33; 1249-52; 705-08] On July 9, 2010, Dr. Cherneskie opined that the plaintiff had the following restrictions: she could sit and stand/walk for less than two hours; needed to shift positions at will; needed to walk every 15 minutes for 5 minutes; and she needed to take unscheduled breaks every thirty minutes. [Tr. 531] Dr. Cherneskie further found that the plaintiff was occasionally able to lift less than ten pounds; that she could rarely twist, stoop, climb stairs, or lift ten pounds; and that she could never crouch, squat, or climb ladders or lift twenty or more pounds. [Tr. 532] Additionally, Dr. Cherneskie limited plaintiff's fine and gross manipulations, stating that she could only engage in fine and gross manipulations 50% of the time and that she could only perform overhead reaching and reaching in front of her body two percent of the time. [Tr. 532] As to the plaintiff's capacity to complete work and stay on task, Dr. Cherneskie noted that she

would be off-task "25% or more" of the time; that she was incapable of even low stress work; and that she would miss more than four days of work per month. [Tr. 533]

On February 25, 2012, Dr. Cherneskie's opinion included further functional restrictions: she could sit and stand/walk for less than two hours; needed to shift positions at will; needed to walk every 10 minutes for 5 minutes; and she needed to take unscheduled breaks frequently for a few minutes. [Tr. 1250] Dr. Cherneskie further found that plaintiff could rarely lift less than ten pounds, twist, stoop, or climb stairs; and that she could never crouch, squat, or climb ladders or lift ten or more pounds. [Tr. 1251] Additionally, Dr. Cherneskie limited plaintiff's fine and gross manipulations, stating that she could only engage in fine and gross manipulations, overhead reaching and reaching in front of her body 5% of the time. [Tr. 1251] As to plaintiff's capacity to complete work and stay on task, Dr. Cherneskie noted that she would be off-task "25% or more," of the time; that she was capable of low stress work; and that she would miss more than four days of work per month. [Tr. 1252]

Dr. Cherneskie's January 7, 2013, opinion contained similar functional limitations contained in his February 12, 2012, opinion with the following differences. The doctor opined that plaintiff needed to take unscheduled breaks every hour for twenty minutes. [Tr. 706] He also found plaintiff could only

engage in fine and gross manipulations 10% of the time and engage in overhead reaching and reaching in front of her body 5% of the time. [Tr. 707]

On December 18, 2012, Dr. Arpad Fejos, plaintiff's orthopedist, opined that plaintiff had the following restrictions: she could sit and stand/walk for less than two hours; needed to shift positions at will; needed to walk every 15 minutes for 5 minutes; and she needed to take unscheduled breaks six to ten times a day for twenty to thirty minutes. [Tr. 695] Dr. Fejos further found that the plaintiff was occasionally able to lift less than ten pounds and climb stairs; that she could rarely twist, or lift ten pounds; and that she could never stoop, crouch, squat, or climb ladders or lift ten pounds. [Tr. 696] The doctor did not assess plaintiff's ability to reach, handle or manipulate. [Tr. 696] As to the plaintiff's capacity to complete work and stay on task, Dr. Fejos noted that she would be off-task "25% or more" of the time; that she was incapable of even low stress work; and that she would miss more than four days of work per month. [Tr. 697]

The ALJ's finding that there "is little objective, clinical evidence to support" the opinions of Dr. Cherneskie and Dr. Fejos is supported by substantial evidence. A review of the record demonstrates that these doctors' opinions are inconsistent with treatment records showing normal strength in

the upper and lower extremities, intact sensation, normal deep tendon reflexes and normal gait. [Tr. 1121, 1123-26, 1148-49, 1274, 1276, 1279 (Dr. Cherneskie's treatment records); 1170-71, 1176-79, 1237-39, 1242, 1256-57, 1281-85, (Dr. Fejos' treatment records); 1238 (Dr. Larson); 1133, 1168, 1229, 1234 (Bristol Hospital); 1197 (Yale Orthopedics and Rehabilitation); 1218 (Bristol Hospital Spine and Pain Center); 1272 (Emergency Department Torrington, CT)]. With regard to plaintiff's hands, treatment records report that plaintiff had "equal grip strength bilaterally" without pain [Tr. 1167-68 (6/15/11)] and manual strength at a 5 out of 5. [Tr. 1170; 1176-78; 1239; 1281; 1284-85] Plaintiff testified that she had no problems with her hands and could lift a quart of milk. [Tr. 47; see also Tr. 1196 (plaintiff reporting "[o]ccasional problems with fine motor skills but nothing persistent")] Plaintiff reported improvement with physical therapy. [Tr. 1176] On February 20, 2012, plaintiff reported feeling about "75% improved and rated her pain 2/10." [Tr. 1260] On October 28, 2012, plaintiff reported "feeling about 65% better overall with pain ranging 2-0/10." [Tr. 673] On October 13, 2011, Dr. Grauer of Yale Orthopaedics and Rehabilitation found that although plaintiff "has multilevel degenerative change and although she has significant stenosis, [she] really does not have significant neurologic complaints or any clear evidence of myelopathy." [Tr. 1197]

On this record, the Court finds there is substantial evidence to support the ALJ's assessment and assignment of weight to the opinions of Dr. Cherneskie and Dr. Fejos.

Plaintiff next argues that the ALJ improperly assigned "significant weight" to the opinion of Dr. Rosenberg, who "conducted a consultative examination, and has never treated Ms. Caruso." [Doc. #20-1 at 18] With respect to this opinion, the ALJ stated: "Significant weight was accorded the opinion of a psychologist, Deborah Rosenberg, Ph.D, in 2011, due to her specialty, the nature of the review, and the consistency with the mental status examinations reflecting intact cognition, memory, attention, and adaptive abilities for simple tasks." [Tr. 574]

The Court first notes that Dr. Rosenberg did in fact treat plaintiff, on September 28, 2011, and October 25, 2011. [Tr. 1205, 1207] Plaintiff was referred to Dr. Rosenberg for a psychological evaluation by Terry Gaines, a physician's assistant; she was also referred to Dr. Rosenberg for treatment by Dr. Cherneskie, her treating physician. [Tr. 1201-04] The evaluation was conducted on September 19, 2011, with Dr. Rosenberg concluding, in part, that plaintiff "show[ed] minimal clinical symptomatology" and "[o]verall psychological distress is mild and other clinical features of her profile are essentially unremarkable." [Tr. 1202] The doctor recommended

individual psychotherapy every other week for ten visits. [Tr.
1203] It appears, however, that the plaintiff attended only two
sessions, on the dates noted above. On this record, the Court
concludes that the ALJ's assignment of weight was not error; Dr.
Rosenberg was not a consultative examiner, but a treating
psychologist to whom plaintiff was referred by Dr. Cherneskie,
and an expert in the relevant field.

Plaintiff next argues that the ALJ erred by assigning
"great weight" to the opinions of the non-examining state
examiners Dr. Katherine Tracy and Dr. Firooz Golkar. [Doc. #20-1
at 18-22]

With respect to Dr. Tracy, the ALJ's assessment was based
on the doctor's

> specialty, the nature of the review, the consistency
> with the substantial medical evidence of record and
> the claimant's reported activities of daily living at
> the time, and the fact that she considered the period
> beginning with the alleged onset date. The substantial
> medical evidence of record (by treating orthopedic
> specialists and pain management providers and
> consultative examiners) after Dr. Tracy's review was
> consistent with her opinion, as clinical findings
> consistently revealed intact motor strength in the
> upper and lower extremities and a normal gait.

> Additionally, the other three State Agency medical
> consultants in 2009 and 2011 also opined a generally
> similar light exceptional ability; the cumulative
> effect of these opinions further supports the opinion
> of Dr. Tracy.

[Tr. 571 (citations to exhibits omitted)] The ALJ further noted
that he assigned "great weight" to the 2009 opinion of Dr.

30

Golkar, based on the doctor's "specialty, the nature of the
review (beginning at the alleged onset), and the general
consistency with the opinion of Dr. Tracy and the substantial
medical evidence of record[.]" [Tr. 571]

"'State agency medical and psychological consultants ...
are highly qualified psychologists who are experts in Social
Security disability evaluation,' 20 C.F.R. §404.1527(f), and, as
the Second Circuit has held, the opinions of non-examining
sources can override the treating sources' opinions provided
they are supported by evidence in the record." Mitchell v.
Astrue, 3:10CV00902(CSH)(JGM), 2011 WL 9557276, at *15 n.22 (D.
Conn. May 24, 2011), report and recommendation adopted,
3:10CV00902(CSH), 2012 WL 6155797 (D. Conn. Dec. 11, 2012)
(quoting Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993)).
Plaintiff fails to articulate how the opinions of the state
reviewing non-examining physicians are unsupported by the
record, except to state that these physicians did not examine
her and only reviewed portions of the medical records. The Court
finds this argument to be without merit. As set forth above, the
contemporaneous treatment records support the opinions of Dr.
Tracy, Dr. Golkar, and the other state agency medical
consultants' regarding plaintiff's physical functioning.

Accordingly, the Court finds that the ALJ's findings were
not error and were supported by substantial evidence.

31

Finally, plaintiff argues that this case should be remanded because the ALJ assigned Consultative Examiner Dr. Balazs Somogyi's May 6, 2010, opinion "significant weight" but a Medical Source Statement signed by Dr. Somogyi on May 10, 2010, was only given "some weight." [Tr. 572] She contends that "the ALJ's decision is not sufficiently specific to make clear to subsequent reviewers the weight given to this medical opinion and the reasons for the weight." [Doc. #20-1 at 22] The Court disagrees. The ALJ reasoned that the May 6, 2010, opinion finding that plaintiff was capable of "light exertional ability and no lifting more than 25 pounds" should be "accorded significant weight as generally consistent with the substantial medical evidence of record reflecting intact motor strength, gait, sensation, and deep tendon reflexes, and due to the nature of the review." [Tr. 572; 508-11] On the other hand, the ALJ found that Dr. Somogyi's May 10, 2010, Medical Source Statement contained "some inconsistencies with [the doctor's] opinion of light work," and that Statement "was accorded only some weight due to these inconsistencies." [Tr. 572; 512-16] This assignment of weight is clear, and permits the Court to conduct a meaningful review, upon which review the Court finds the assignment of weight to be supported by substantial evidence.

Accordingly, plaintiff's motion is denied on this claim of error.

32

D.   The ALJ Properly Determined the Plaintiff's
     Credibility.

Plaintiff next argues that the ALJ erred in his credibility determination. The ALJ is required to assess the credibility of the plaintiff's subjective complaints, engaging in a two-step process. See generally 20 C.F.R. §§404.1529, 416.929. First, the ALJ must determine whether the record demonstrates that the plaintiff suffered from a medically determinable impairment that could reasonably produce the alleged symptoms. 20 C.F.R. §§404.1529(b), 426.929. Second, the ALJ must assess the credibility of the plaintiff's complaints regarding the intensity of the symptoms. 20 C.F.R. §§404.1529(c), 426.929. If the "Plaintiff's claims concerning the intensity, persistence or functional limitations associated with his impairments [are] not fully supported by all of the clinical evidence, the ALJ must consider specific factors laid out in 20 C.F.R. §404.1529(c)[.]" See Skillman v. Astrue, No. 08CV6481, 2010 WL 2541279, at *6 (W.D.N.Y. June 18, 2010). These factors include: "(1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain; (3) any precipitating or aggravating factors; and (4) the type, dosage, effectiveness, and side effects of any medication taken by claimant to alleviate the pain." Id. (citing 20 C.F.R.

33

§404.1529(c)(3)(i)-(iv)).

"Assessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record." SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996). Furthermore, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id. at *2. "Put another way, an ALJ must assess subjective evidence in light of objective medical facts and diagnoses." Williams, 859 F.2d at 261.

After summarizing plaintiff's testimony, the ALJ made the following statement regarding plaintiff's credibility:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. I carefully considered the claimant's testimony and statements of pain and limitations in the record. This record contains many inconsistencies, some of which were resolved in favor of the claimant (such as her diagnosis of Fibromyalgia). However, the claimant's credibility was limited by her inconsistencies in reporting symptoms and activities of daily living, and by her possible narcotic abuse, resulting in discharge

from a pain care clinic.
[Tr. 569] The ALJ then conducted a detailed analysis of the objective and other evidence of record supporting this finding. [Tr. 570]

Plaintiff first takes issue with the ALJ's use of "boilerplate language," which she claims is "meaningless," and contends that this matter should be remanded so that the ALJ can make explicit credibility findings. [Doc. #20-2 at 23] This argument, however, is without merit as the ALJ's credibility analysis was not limited to boilerplate language. Indeed, as noted above, he engaged in an extensive analysis of the record and found plaintiff not credible based on a number of different factors including: inconsistencies in urinary drug screenings; plaintiff's discharge from the pain clinic for abuse of opiate prescriptions; plaintiff's inconsistent statements regarding the efficacy of physical therapy, activities of daily living, pain management, and her representations why she stopped working; and inconsistencies between her testimony and the medical evidence of record. [Tr. 570] Accordingly, the ALJ's use of boilerplate language does not constitute error, because it was "supported by specific recitations" of facts in the record. Halmers v. Colvin, No. 12CV00288(MPS), 2013 WL 5423688, at *7 (D. Conn. Sept. 26, 2013). The inclusion of boilerplate language regarding credibility is not per se error. "If the ALJ has otherwise

explained his conclusion adequately, the inclusion of this language can be harmless." Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012). There is "no reason to second-guess the credibility finding in this case where the ALJ identified specific record-based reasons for his ruling." Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010). Moreover, the ALJ had the opportunity to personally observe plaintiff and her testimony, something the Court cannot do. Accordingly, the Court finds no error in the ALJ's assessment of plaintiff's credibility.

E.    There is Substantial Evidence Supporting the ALJ's RFC
      Determination.

Plaintiff next argues that the ALJ failed to properly determine her RFC. The ALJ found that plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) except that she requires a sit/stand
> option and can stand and/or walk for four hours in an
> eight hour workday, with occasional climbing of stairs
> and ramps, balancing, stooping, kneeling, crouching,
> and crawling, but no climbing of ropes, ladders or
> scaffolds.  The claimant is limited to frequent
> reaching and handling with the upper extremities. The
> claimant is limited to jobs involving simple, routine,
> repetitive tasks with short, simple instructions and
> few workplace changes. She has the attention span to
> perform simple work tasks for two-hour intervals
> throughout an eight-hour workday, and can occasionally
> have superficial interaction with coworkers but can
> have no contact with the public. The claimant's work
> environment must not have high-paced production
> demands or strict adherence to timed production.

[Tr. 560-61]

Plaintiff first claims that the RFC assessment "far exceeds" her capabilities for two reasons: (1) "the ALJ should have included greater limitations on [her] physical abilities[,]" and (2) the ALJ failed to consider her moderate limitation in concentration, persistence and pace in her RFC. [Doc. #20-1 at 25-26] The Court construes this as an argument that the ALJ's RFC is not supported by substantial evidence.

The regulations define light work as follows:

> Light Work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§404.1567(b), 416.967(b).

Despite plaintiff's arguments to the contrary, the ALJ's RFC determination is supported by substantial evidence of record. The ALJ conducted a detailed review of the relevant evidence of record, including plaintiff's testimony, treatment notes from plaintiff's medical providers, and the medical opinions. [Tr. 560-74] The ALJ specifically considered the evidence regarding plaintiff's mental impairments in his RFC

determination. [Tr. 568-70] He also took into account the
"additional limitations" affecting her ability to perform light
work. [Tr. 576] As previously discussed, the ALJ permissibly
considered the opinions of the state reviewing non-examining
physicians Dr. Tracy, Dr. Golkar, Dr. Johnson, Dr. Rittner, and
Dr. Swanson, and treating psychologist Dr. Rosenberg. [Tr. 68-
71; 78-80; 90-93; 703-04; 735-36; 750-51; 765-68; 778-81; 1201-
04] The limitations ascribed by their respective physical and
mental RFC determinations support the ALJ's RFC findings. Other
substantial evidence of record, recited in the Court's
discussion above, also supports the ALJ's findings.

    Thus, for the reasons stated, the Court finds no error in
the ALJ's RFC assessment, which is supported by substantial
evidence of record.

    F.    There is Substantial Evidence Supporting the ALJ's
          Step Five Determination.

    Plaintiff next contends that the ALJ erred at Step Five of
the sequential evaluation because he failed to present credible
evidence of jobs which plaintiff could perform with her "actual"
RFC. [Doc. #20-1 at 27, 29] Substantial evidence supports the
ALJ's determination that the plaintiff is able to perform a
significant number of jobs in the national economy. As
discussed, the ALJ properly weighed the medical evidence at
issue, and his RFC and credibility findings are supported by

substantial evidence of record. As to whether there are jobs
that the plaintiff can perform, the VE testified that given the
RFC determined by the ALJ, the plaintiff would be able to
perform occupations such as hand packer, production worker, and
production inspector. [Tr. 1322-23; 576] The VE further
estimated that over 1,000 jobs in each of these positions exist
in Connecticut. [Tr. 576]

Plaintiff argues that she cannot perform the job of "Hand
Packer," as it would be "inconceivable that [she] would be able
to perform this job while sitting" and this job requires skills
and reasoning that exceed her reasoning level. [Doc. #20-1 at
28] She also argues that she cannot perform the job of
"Production Worker" because that job cannot be performed with a
sit/stand option and requires fine hand manipulation and
reasoning that exceeds her abilities. [Doc. #20-1 at 28-29] With
respect to the job of "Production Inspector," which the
plaintiff refers to as "Pencil Inspector," plaintiff argues that
this job requires skills and reasoning that exceeds her
abilities, and this job does not exist in Connecticut. [Doc.
#20-1 at 29]

The ALJ squarely addressed whether these jobs could be
performed with a sit/stand option in his hypothetical questions
to the VE. [Tr. 1322-23] In response, the VE stated that all
three jobs would be available with that option. [Tr. 1322] There

39

is no error as to that issue. As discussed above, there is also substantial evidence to support the ALJ's determination regarding plaintiff's ability to do fine hand manipulation. [Tr. 573 (noting medial reports of normal grip strength and minimal treatment for hand issues)]

As to plaintiff's argument that the reasoning levels of the identified jobs exceed the hypothetical limitation of "simple, routine, repetitive tasks with short, simple instructions and few workplace changes," [Tr. 561] "[a] number of courts have found that a limitation of simple tasks or instructions is consistent with [General Education Development] GED level 2 reasoning." Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 408 (D. Conn. 2012) (citing cases), aff'd, 515 F. App'x 32 (2d Cir. 2013)). Plaintiff's contention that she is limited to jobs at a Reasoning Level One is not supported by the evidence of record. For example, Dr. Rosenberg stated in her September 19, 2011, Psychological Evaluation that the plaintiff's "[p]erception and thought content appear to be within normal limits ... she appears to be intellectually functioning in the average to low average range." [Tr. 1203]

Finally, plaintiff argues that she cannot perform the job of "Production Inspector," as the job is in fact listed at "Pencil Inspector" and there are no pencil factories in Connecticut. [Doc. #20-1 at 29; Tr. 1322] Here, the VE testified

that, based on his experience, there are 87,000 jobs in the
national economy and 1,200 in Connecticut for production
inspector, [Tr. 1322] and the Court finds that "the ALJ was
entitled to rely on such testimony as the vocational expert
identified a significant number of jobs available." Koutrakos v.
Colvin, No. 3:13CV1290(JGM), 2015 WL 1190100, at *22 (D. Conn.
Mar. 16, 2015) (citing cases); Calabrese v. Astrue, 358 F. App'x
274, 276 (2d Cir. 2009) (citations omitted) ("An ALJ may rely on
a vocational expert's testimony regarding a hypothetical as long
as the facts of the hypothetical are based on substantial
evidence, ... and accurately reflect the limitations and
capabilities of the claimant involved." (internal citations
omitted)). Even if there were error in relation to the
Production Inspector job, plaintiff has not challenged the
reliability of the VE's testimony as to the existence of jobs in
significant numbers in Connecticut for hand packer and
production worker. "[E]ven one available job may meet the
commissioner's burden at Step 5. Thus, elimination of one job
would not constitute harmful error." Hatt v. Soc. Sec. Admin.
Comm'r, No. 1:13CV00335(NT), 2014 WL 4411600, at *4 (D. Me.
Sept. 5, 2014) (citation omitted). See also Brown v. Astrue, 852
F. Supp. 2d 543, 557 (D. Del. 2012) ("In order to meet the
burden of production at step five of the sequential analysis,
the Commissioner needs to identify at least one occupation that

41

exists in significant numbers in the national economy that a claimant can perform."); Rios v. Astrue, 848 F. Supp. 2d 1283, 1290 (D. Colo. 2012) (holding that any error in one of three jobs identified by VE as available to plaintiff was harmless if no error shown as to other two).

Accordingly, the Court finds no error in the ALJ's reliance on the vocational expert's testimony in support of his determination at step five.

## VI. CONCLUSION

For the reasons set forth herein, plaintiff's Motion for Order Reversing the Decision of the Commissioner, or in the alternative, for Remand [**Doc. #20**] is **DENIED**. Defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #24**] is **GRANTED**.

Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of the receipt of this order. Failure to object within fourteen (14) days may preclude further review. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 72.2 of the Local Rules for United States Magistrates; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989) (per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

In accordance with the Standing Order of Referral for

Appeals of Social Security Administration Decisions dated September 30, 2011, the Clerk is directed to assign this case to a District Judge for review of the Recommended Ruling and any objections thereto, and acceptance, rejection, or modification of the Recommended Ruling in whole or in part. See Fed. R. Civ. P. 72(b)(3); D. Conn. L. Civ. R. 72.1(C)(1) for Magistrate Judges.

SO ORDERED at New Haven, Connecticut, this 11th day of January 2016.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE